Today, the panel will have six cases to decide, two of which are armament briefs, and for purposes of the record, I will list those two and proceed to oral argument. The first submitted case is 2010-3124, Cougar v. Agriculture. The second case is 2010-7088, O'Connor v. DBA. First case to be argued orally will be Fisher v. United States, number 2008-5094. Mr. Swift, remember you're ready? Thank you, Your Honor. May it please this honorable court. Mr. Fisher's legal matters, much like his medical diagnosis, have wandered around once already to this court, then found point. And there have been a lot of detours, so to speak. But for today's argument, I'd like to focus on what Mr. Fisher believes is the critical point in time in his medical procedures within the United States Air Force. And that was at the time of his release. Mr. Fisher went to three MEBs. Those occurred in May 24th, 1991, September 21st, 1995, and then finally on June 20th, 1996. None of these ultimately resulted in Mr. Fisher being rated as disabled. For the second one, he was referred to an IEB that rated him at 10%, but a formal board found no disability. All of these were based on his ability to continue to do his job as a physician. The critical point happens, however, on December 31st when he is involuntarily released from the United States Air Force. Mr. Fisher was brought in, appointed as a major, unlike other persons, as a doctor. He was brought in as a reservist at a high rank because of his technical proficiency and already rating as a doctor and the research and special skills that he had. Under that program, he was appointed and continued to serve. In 1996, Mr. Fisher did not, for the year 1997, opt for a bonus that would obligate him for future service. He was not obligated to take the bonus, nor did that discharge him. However, when he did not take the bonus, the Air Force chose to discharge Mr. Fisher, which was within their right. However, it was not a voluntary discharge. This was not one where Mr. Fisher resigned from service. And that's critical because that goes to the Air Force's own regulations, which we've cited in our brief, 48.123, paragraph 14, 13.2. And that part said that Mr. Fisher, who was suffering from this disability condition, he had had joint pain, would have been reported in one of these MEBs and had at that point been diagnosed with rheumatoid arthritis. But as he, at that point, what should have happened was an evaluation made as to whether the condition had stabilized, whether the condition was treatable, and he kept on active service until a final determination could be made. You see, the MEBs had all been focusing on could he do his job. The question here now in discharging him, is he stable? And to give an example here, I think it's an extreme example, but it works, if the board were to, if this court upholds the government in the lower court, a service member has cancer. A service member can do their job with cancer quite often in its early stages. They can perform. So if I go to a board and the only criteria is can I do my job today, even though I'm suffering a disease that's slowly killing me, then I'll be found fit for duty. But at the end, does the military get to simply discharge me? Well, you're fit for duty throughout the period of time, and the answer is no. It's all regulations. That either has to be stabilized or determination as to its disability made at the time of discharge, and that's not what happened in Mr. Fisher's case. But Mr. Wise, doesn't he carry the burden and the presumption of fitness that has to be overcome? He has to overcome that presumption. Two parts to that, yeah. Let me finish for one second. What did he submit to overcome that presumption of fitness? Because of the way the Air Force did his discharge, he wasn't given the opportunity. There was no separation of physical, no separation of proceedings. He was simply separated administratively on December 31st. He wasn't given that opportunity. What did happen is he immediately went to the VA, and in March of 1997, he was diagnosed with a 50% disability because of rheumatoid arthritis. Now, this court has found that a contemporary VA diagnosis has great weight in rebutting his fitness for service at the time. And we submit that that was submitted at the lower court and to the Board of Corrections as part. And again, we've kind of mixed apples to oranges up to this point, because it was immediately looked to the VA's part as, well, how did that have related back a year before? We're back to the earlier MEBs, and we have a degenerative disease, and we should be looking at the time that he was discharged. And I think a very good case for this court to look at is Peoples, which we cite in our brief, which is similarly situated where a military member with another skeletal muscular disease is in the process of undergoing surgery, is in the process of getting the treatment at the time that they're discharged. And the question there is, well, the discharge, have we preserved that there is a level of disability? And again, what the court looked to is the VA level, which found almost contemporaneously at 80%. Admittedly, a slight bit less, 30% more, but at 50% and 80%, there's no question of the level of disability. And the efforts did not follow its own procedures. Had they done so, based on the VA's evaluation at that time, Mr. Fisher would have been disabled. And again, I think throughout the process of this, there's been sort of an apple and orange mix looking back, rather than at the critical time, which is at the time of discharge. Could he have submitted his own physical at that point? No, he could not, Your Honor. He has no right as a service member at an administrative part to get an outside or independent physical to put into his own records. His military records are his military records, and they are done by the military. Did he ask for a physical at that point? I don't know, Your Honor. It would have been part of the standard procedure, but I don't know whether he asked or not. I know that one was not done. Was it unusual for it not to be done? Yes, Your Honor. As a service member myself, it was reminded to me that I couldn't retire until I'd done it. I said, I'd done one a week before. I'd had my regular physical six months before. We don't care. It's part of the regs. You must do a separation physical. And none was done in his case. What's going on with the entry physical and the separation physical determines what went on in between, right? Absolutely, Your Honor. Absolutely. And that's we have the beginning, we don't have the end, and that is critical in this case. And I understand Mr. Fisher was an odd animal even within the Air Force in his source of appointment, the type of reservist that he was, the type of duties that he performed, but it really can't be debated on these two points. Mr. Fisher suffers from rheumatoid arthritis. The symptoms began showing while he was in the Air Force. They reported consistently throughout the MEDs. Like many things, it's not immediately diagnosed correctly, but it is in his medical records by the time he is being separated. And what should have been done at that point was a separation physical, and what should have been done and went back on what's appropriate is an appropriate level of disability at the time of discharge. The Air Force had every right to discharge Mr. Fisher. What they didn't have a right to do was deny him that particular medical care. And we believe that whatever standard of the view is put to the Air Force first, and again, we looked a lot at this question of what is his position as a physician? What standards should he adhere to? What ability does he need to perform to? Where should his evaluations be? One thing I would point out in the VA incompatibility, and the case lays a bit mixed. Sometimes VA compatibility seems to be very important and other times less. In this case, it would be very important, because VA is looking particular in this case because we're looking at a physician. The government can't have it both ways. The government cannot have it and argue that, well, VA is incompatible to service part and shouldn't really be given much effort, but we should specifically look at a physician in this part rather than a general military standard. Well, VA, of course, is looking at a physician and finding that the physician is 50% disabled, because they are looking at him within the career. If there are questions at this time, I'm going to reserve the remainder of my time. Thank you, Mr. Palmer. Thank you. Mr. Michael? Yes, Your Honor. Commander Swift. May it please the Court. Many of the issues that Dr. Fisher raised we addressed in our briefs, but there are two issues that I want to address specifically in response to his argument. First, the notion that he did not have, Dr. Fisher did not have a separation physical. It is true that the record evidence does not show whether he had one or not. Nevertheless, I would first posit that that issue was not raised below to the ABCMR on Ward 1 or Ward 2 or to the Court of Federal Claims in Court of Federal Claims Hearing 1 or 2. Nevertheless, I do believe that the record does show that on December 13, 1996, which was 18 days before he was released from active duty, Dr. Fisher did go see a physician, Dr. Higgs, and the medical evidence at that time showed that while he did possess this condition of seronegative rheumatoid arthritis, it was unremarkable and arguably stable, and that evidence alone does not overcome the presumption of fitness. And that's one of the problems we believe Dr. Fisher has in this case, and that is there's no direct evidence that he couldn't perform the duties of his greater office at that time. He was performing them admirably, according to his fitness reports. Moreover, even his complaint admits that in paragraph 4. Now, getting to whether he had a fair hearing, let's assume, for the purposes of argument, he did not have a medical exam. Nonetheless, this Court has held in Soyer, as well as in Chambers, that the BCML hearings can, in fact, rate disability in the first instance. So, in a sense, he did have a hearing, not once, but twice, and was allowed to submit evidence to the Board at that time. That evidence was reviewed. We respectfully disagree with Dr. Fisher's argument that the VA ratings weren't considered. They were considered. They just were. The Board, as the regulations state, and as this Court has found on numerous occasions, there are two different systems. And in this case, they felt that the fact that Dr. Fisher was performing admirably in his duties at the time he was released into the Reserves, or back into the Reserves, overcame the evidence in the VA ratings. They also considered the fact that Dr. Fisher, when he finally was discharged from the Reserves in 2001, some five years after the fact, that the primary basis for that was a letter saying he was injured in a bicycle accident. So, in this case, there wasn't substantial evidence supporting the Board's conclusion. Finally, whether Air Force Regulation 48-123 applies. In this case, as we state in our brief, don't believe it does. The paragraph and section he relies upon, Chapter 14 of that regulation, applies to Reserve officers, but it's Reserve officers who are not on extended active duty. It's for those Reserve officers who are being called to active duty for, I think the regulation states, active duty for training, IDT and active duty for training, or annual training. And that's not the case here. So that regulation doesn't apply. In fact, paragraph 5 of that regulation specifically states this regulation should not be used for determining fitness for duty or disability ratings. But he was not given, the Air Force admits he was not given a termination physical at that point? I can't speculate to that, because we don't know. The record does not contain that. We have not had the opportunity. If the record doesn't contain it, you can assume that it was not done. Otherwise, the record would contain it. Well, it would contain it if that issue was raised below, and it wasn't. But as I said before, Your Honor, let's presume that there was no physical. We do know the fact is that the BCMR considered his case for the first time for disability ratings in 2000 and in 2007. At that time, even assuming that he raised that issue, they, standing alone, can make a disability rating in the first instance. That was subsequent to and sometime later. Absolutely. Three years later, and then seven years later. Right. Well, more than that, that's true. But you can still use the evidence. In fact, many of the disability cases that this court hears and the trial court hears are cases where someone is discharged from active duty or released from active duty, gets a VA rating subsequent to that release that's usually higher than any rating they receive, and they challenge their separation, arguing that they should have been retired for disability instead of released from active duty. And that is a piece of the evidence, the medical exam, certainly. One thing to consider, though, in this case is that Dr. Fisher was a medical officer. The medical profession in the military are the ones that monitor medical exams, and if Dr. Fisher, I think, felt that he wasn't given all the due process rights he needed, he certainly had access and the ability to bring those claims to the medical officials in the command. But as I said, the evidence certainly — Do we treat doctors differently than pilots do when they're discharged? No. All service members get treated differently. But I think — Excuse me. Oh, excuse me. Just saying. Medical officers do have some rules that Congress enacted back in the 70s requiring that if, in fact, they possess a disability, it does not mean that possessing that disabling condition, standing alone, should cause them to be considered for disability separation. And I think paragraph 15A in DOD Directive 1332.18 specifically talks about, if a medical officer can be utilized in another assignment commensurate with his grade or rank, then, in fact, they should reassign her or him into that other duty assignment instead of processing them for separation. I'm subject to your questions. We believe that the trial court's decision should be affirmed. The decision of the AFB-CMR in both cases was supported by substantial evidence of non-arbitrary capriciousness. Thank you, Mr. Morgan. Do we have time? Just on reserve, maybe two minutes, Your Honor. Two minutes is fine if you'd like it.  Yes, Your Honor. Two points that I believe are left in this. One, we argue that the regulation does apply. The other part to it is that while there is a substantial discretion, the DOD believed that the Air Force Board of Corrections exercised a reasonable decision when it looks at the separation of 50 percent disability within three months based on exam for rheumatoid arthritis and conjunction at the time that he was discharged on December 31st. The two don't go together. I certainly could understand the Air Force's frustration with Dr. Fisher. Dr. Fisher continued to come in and say, I'm hurting, and nobody could figure out why. Eventually, we figured out why. Dr. Fisher was absolutely, well, the level to which it had progressed based on the finding of the VA was far more than anyone had thought. Certainly, I can understand the frustration, but that frustration should not result in Mr. Fisher being, or Dr. Fisher being denied his military retirement. Thank you. Thank you, Mr. Lawrence. The case is submitted.